UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br>    v.<br><br>TERRY WILLIAMSON,<br><br>            Defendant. | Case No. 2:15-cr-00127-MMD-VCF<br><br>ORDER |

**I.     SUMMARY**

Defendant Terry Williamson was convicted of count one in the Superseding Indictment, charging him with conspiracy to commit mail and wire fraud. (ECF Nos. 529, 530.) The government now moves for: (1) an order of criminal forfeiture money judgment totaling $1,936,641.99,[1] claiming that amount reflects the illegal proceeds Williamson obtained from the conspiracy ("Forfeiture Motion") (ECF No. 641);[2,3] and (2) restitution in the amount of $1,924,041.99 ("Restitution Motion") (ECF No. 582).[4] Because the Court

---

[1] The government initially sought a different amount (ECF No. 641), but clarified it was seeking this amount at the Hearing.

[2] The parties have extensively briefed these issues. The Court has also considered Williamson's opposition and incorporated briefing (ECF Nos. 644, 584, 585, 590, 591), and the government's reply and incorporated briefing (ECF Nos. 648, 595, 596, 599). The Court also granted the government's motion to file a supplemental brief (ECF No. 683), so the Court reviewed that brief (ECF No. 666). The government subsequently filed notices that it was withdrawing several arguments raised in its prior briefing based on developments in the caselaw after it submitted its pertinent briefs, including dropping its reliance on a case it relied on in its supplemental brief. (ECF Nos. 667, 673, 685.)

[3] The Court previously denied without prejudice the government's prior motions on these issues. (ECF No. 605 (denying the government's motions at ECF Nos. 575, 580, 581).)

[4] The Court has reviewed Defendant's response (ECF No. 589), and the government's reply (ECF No. 597).

finds the government has demonstrated Williamson had possession and control over the forfeiture amount and is entitled to restitution—and as further explained below—the Court will grant both motions.

**II.     BACKGROUND**

The Court recalls the following facts of this case as provided in the Court's order denying Defendant's renewed motion for judgment of acquittal (ECF No. 556), along with additional relevant details.

Williamson, along with five co-defendants, were indicted on one count of conspiracy to commit mail and wire fraud under 18 U.S.C. §§ 1341 and 1343 in violation of 18 U.S.C. § 1349. (*Compare* ECF No. 5 (Superseding Indictment charging, along with Williamson, Defendants Andrew Hanzelic, Kelly Coyan, Brian Summers, Ronald Kelly, and Clint Tarrant) *with* ECF No. 195 (Second Superseding Indictment charging, along with Williamson, only Defendants Hanzelic, Coyan, and Kelly).)[5]

The Second Superseding Indictment contained a forfeiture allegation under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). (ECF No. 195 at 6-7.) The forfeiture allegation provides that, upon conviction, the subject Defendants would forfeit to the government "any property, real or personal, which constitutes or is derived from proceeds traceable" to the offense of conviction in the form of an *in personam* money judgment of at least $2,700,000. (*Id.* at 7.) The government additionally expressed its intention to seek an *in personam* criminal forfeiture money judgment via 21 U.S.C. § 853(p) for any property that has been transferred, cannot be located with due diligence, has been diminished in value, comingled with other property and cannot be divided, or placed beyond the Court's jurisdiction due to Defendants' act or omission. (*Id.*)

The Second Superseding Indictment also alleges the following facts. Between January 2009 and April 2011, Defendant Andrew Hanzelic and his co-conspirators

---

[5]Defendants Clint Tarrant and Brian Summers entered plea agreements after the Superseding Indictment but before the Second Superseding Indictment were filed. (ECF Nos. 168, 194.)

devised a scheme to file fraudulent tax returns, to obtain tax refunds from the U.S. Treasury by using deceased individuals' dates of birth and social security numbers. (*Id.* at 1-4.) In furtherance of the scheme, Hanzelic obtained the personal identifying information of deceased taxpayers and showed others how to use the information to prepare false tax returns to claim tax refunds. (*Id.* at 3.) Defendants also used different financial accounts to convert the proceeds of the scheme for their own uses. (*Id.* at 4.)

All of Williamson's charged co-conspirators entered plea agreements. (ECF Nos. 168 (Tarrant), 194 (Summers), 263 (Coyan), 264 (Kelly), 274 (Hanzelic).) Williamson went to trial. A jury returned a verdict of guilty for Williamson on the single count of conspiracy to commit mail and wire fraud. (ECF No. 530.)

At Williamson's trial, the government offered evidence, including testimony from Hanzelic, that Williamson's primary role pertained to the latter part of the scheme—converting treasury refund checks into cash for distribution to Williamson, Hanzelic and the other coconspirators. Williamson joined the conspiracy to help set up a business operated under the name Refund and Rebates Management, Inc. ("RRMI") to funnel tax refund checks and cash them for distribution. (ECF No. 566 at 94-95 (testifying at the trial that Williamson got involved in the conspiracy around March 8, 2010).) Moreover, in overruling most of Williamson's objections to the Presentence Report (ECF No. 604), the Court found that:

> The evidence offered [at trial] shows Williamson at a minimum maintained RRMI's bank records, had access to those records, endorsed some of the treasury checks made out to other individuals and deposited them into the RRMI's Chase Bank account, withdrew from and deposited funds into that account, and issued checks to others from that account.
>
> . . .
>
> Hanzelic testified that he explained to Williamson that the scheme was fraudulent and that the identities used belonged to deceased individuals . . . . According to Hanzelic, Williamson suggested they set up a corporation and open a bank account for the corporation to deposit the treasury refund checks . . . Amanda Stankiewicz testified that she heard conversations between co-defendant Clint Tarrant and Williamson about the tax returns being fraudulent.
>
> . . .

> What is relevant is that the evidence supports the government's argument that Williamson withdrew funds from RRMI's account and deposited them into his personal account.
>
> . . .
>
> The evidence presented at trial supports the statement that Williamson managed RRMI's account.

(ECF No. 604 at 4-5 (citing to trial transcript and other introduced evidence).)

With the exception of Summers, Williamson's co-conspirators faced relatively small (or no) monetary forfeiture demands, in comparison to the amount the government seeks against Williamson. (ECF No. 262 at 12-13 (striking out a forfeiture amount for Kelly); ECF No. 277 at 10-13 (concerning only fines and restitution but no forfeiture for Hanzelic); ECF No. 176 (forfeiture amount of $100,666.20 for Tarrant); ECF No. 460 at 5-6 (no forfeiture for Coyan).) By plea agreement, a $1,500,000 forfeiture order has been imposed against Summers. (ECF No. 237.)

Williamson contests the government's forfeiture money judgment demand, and requested a hearing on the issue under Fed. R. Crim. P. 32.2(b)(1)(B).[6] (ECF No. 584 at 1-3, 6-7.) The Court held such a hearing on October 6, 2020 (ECF No. 687 ("Hearing")), and incorporates additional arguments made at the Hearing in its analysis below.

## III.    FORFEITURE MOTION

The government seeks an *in personam* criminal forfeiture money judgment against Williamson, under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). (ECF No. 641.)

//

//

---

[6]Fed. R. Crim. P. 32.2(b)(1)(B) provides:

**(B) Evidence and Hearing**. The court's determination may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable. If the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty.

4

Williamson opposes the Forfeiture Motion, chiefly contending that the Court should apply *United States v. Honeycutt*, 137 S. Ct. 1626 (2017)[7] to the forfeiture issue here—as adopted in the analysis of the Third and Eleventh Circuits in *United States v. Gjeli*, 867 F.3d 418 (3rd Cir. 2017), *cert. denied*, 138 S. Ct. 697, and 138 S. Ct. 700 (2018), and *United States v. Carlyle*, 712 F. App'x 862, 864 (11th Cir. 2017) (per curiam). (ECF No. 644 at 2.) Williamson's contention is, in gist, that under *Honeycutt* the government must demonstrate that the forfeiture amount reflects "illegal proceeds" "obtained" by Williamson, not others, and additionally meet the substitution requirements of § 853(p). (*Id.* at 2-4.) Williamson also incorporates arguments he made in his prior briefing at ECF Nos. 584, 585, 590, and 591. (ECF No. 644 at 1-2.) Those arguments are additionally that Williamson is entitled to a jury determination of the forfeiture money judgment amount, and the forfeiture amount the government seeks violates the Excessive Fines Clause of

---

[7] In *Honeycutt*, the Supreme Court examined 21 U.S.C. § 853 and ultimately held that a defendant may not be "held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire." 137 S. Ct. at 1630.

Several courts of appeals have reached conflicting decisions on the issue of whether *Honeycutt*'s joint and several liability reasoning extends to forfeiture orders under § 981(a)(1)(C). As Williamson notes, the decisions of the Third and Eleventh Circuits in *Gjeli* and *Carlyle*, respectively, support the application of *Honeycutt* to § 981(a)(1)(C). *See Gjeli*, 867 F.3d at 427-428 & n.16; *Carlyle,* 712 F. App'x. at 864-65. The Sixth and Eighth Circuits disagree. *See United States v. Sexton*, 894 F.3d 787, 798-799 (6th Cir. 2018), *reh'g denied* (July 16, 2018), *cert. denied*, 139 S. Ct. 415 (2018); *United States v. Peithman*, 917 F.3d 635, 652 (8th Cir. 2019), *cert. denied*, 140 S. Ct. 340 (2019).

The Ninth Circuit Court of Appeals has not definitively ruled on the issue, though it has offered suggestive takes on the application of *Honeycutt* to § 981(a)(1)(C). *See, e.g., United States v. Kwok Cheung Chow*, 772 F. App'x 429, 433 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 915 (2020) ("*Honeycutt* therefore abrogated *Newman*'s holding about the *general* propriety of applying joint and several liability to criminal forfeiture statutes—after *Honeycutt*, courts must look to the specific provisions of the forfeiture statute at issue to determine if joint and several liability applies.") (emphasis in original); *United States v. Nejad*, 933 F.3d 1162, 1165 (9th Cir. 2019) (citations omitted) ("We are not free as a three-judge panel to overrule [*United States v. Casey*, 444 F.3d 1071, 1077 (9th Cir. 2006)], *Newman*, and [*United States v. Lo*, 839 F.3d 777, 792-94 (9th Cir. 2016)] because those decisions are not 'clearly irreconcilable' with the reasoning or holding of *Honeycutt* . . . the Court in *Honeycutt* did not rely solely, or even predominantly, on the absence of an express textual basis for imposing joint and several liability. The Court instead relied on the fact that permitting a defendant to be held jointly and severally liable for the forfeiture of property he never acquired or used would conflict with several provisions of § 853.").

the Eighth Amendment.[8] (ECF No. 584 at 3-4, 6, 10; ECF No. 590 at 1-2; ECF No. 591 at 3-4.) Williamson also claims that imposition of the requested criminal forfeiture money judgment would be excessively punitive given Williamson's "limited role and questionable knowledge of the conspiracy" thereby violating his Sixth Amendment right to proceed to trial. (ECF No. 590 at 2.)

The government argues that *Honeycutt* does not apply to § 981(a)(1)(C). (ECF No. 641 at 1, 6-10.) Alternatively, the government asserts that if the Court finds that *Honeycutt* applies to § 981(a)(1)(C), it has met its burden to show Williamson obtained, acquired, possessed, controlled, used, or benefitted from the requested forfeiture amount. (*Id.* at 1, 10-18.) Challenging Williamson's Eighth Amendment contention, the government submits, *inter alia*, that the Eighth Amendment and certain cases Williamson relies on do not apply to illegal proceeds—as is at issue. (*Id.* at 1, 18-29; *see also* ECF No. 648 at 16-20.) The government also incorporates its prior briefing at ECF Nos. 595, 596, 599 in response to Williamson's noted incorporations. (ECF No. 648 at 1.) This briefing builds upon the government's additional contentions that the government is not required to meet the requirements of § 853(p) and Rule 32.2(e) to obtain the money judgment; disparate treatment does not apply to forfeiture; there is no constitutional or statutory right to a jury determination of a forfeiture money judgment amount; and the government is not punishing Williamson for his decision to go to trial with the forfeiture amount. (*Id.* at 13-16; ECF No. 595 at 11-18; ECF No. 596; ECF No. 599 at 15-20.)

The Court generally agrees with the government. The Court addresses these arguments, in turn, below.

**A.   *Honeycutt***

The Court addresses the government's alternative argument, assuming that *Honeycutt* applies to § 981(a)(1)(C), limiting joint and several liability. Because Williamson

---

[8]Williamson also reserves a challenge under both the Due Process and Double Jeopardy Clause of the Fifth Amendment for purposes of appeal. (ECF No. 584 at 4.)

6

"'possess[ed],' 'acquired[,]' or 'used' the money the government seeks through forfeiture, and that money was directly connected to his 'participation in the crime[,]'" the Court need not—and does not—resolve "whether Honeycutt extends to forfeiture under 18 U.S.C. § 981(a)(1)(C)[.]" *U.S. v. Anthony*, 747 F. App'x 628, 629 (9th Cir. 2019) (taking the same approach); *see also U.S. v. Richie*, Case No. 2:15-CR-285-APG-GWF, ECF No. 455 at 4 (D. Nev. Aug. 9, 2019) (same). (*See also* ECF Nos. 641 at 8-9, 648 at 8-9 (making this argument based on *Anthony*).)

Here, the government has demonstrated that Williamson had possession and control over the fraudulent tax refunds deposited into RRMI's two Chase Bank accounts—ending in 5004 and 4197—for 2010 ($1,466,025.43) and 2011 ($470,616.56), totaling at least $1,936,641.99.[9] (ECF No. 641-1 at 15, 17.) Williamson was one of two authorized signers on both accounts.[10] (*Id.* at 4, 6.) He maintained RRMI's Chase Bank accounts' records (ECF No. 566 at 105), had access to these accounts (*id.*), endorsed some of the treasury checks made out to other individuals and deposited them into these accounts (s*ee, e.g.*, Trial Exhibit 2 at bates nos. 027993, 027994, 027995, 027996, 027997, 027998), withdrew from and deposited funds into these accounts (*see, e.g.,* Trial Exhibit 5 (using RRMI funds to purchase two trucks; Trial Exhibit 8A (showing Williamson's cash withdrawals)), and issued checks to others from these accounts (ECF No. 566 at 107-112). The evidence presented at trial shows by a preponderance of the evidence that Williamson had possession, control, and the ability to use the fraudulent tax refunds in RRMI's two Chase Bank accounts, which sufficiently supports the government's requested forfeiture amount.

---

[9]This amount is slightly less than the amount identified in the Forfeiture Motion. (ECF No. 641 at 1.)

[10]Gerry Adams is the other authorized signer. (ECF No. 641-1 at 4, 6.) Hanzelic testified that he used a fake ID under the name of "Gerry Adams" to open RRMI's Chase Bank accounts with Williamson. (ECF No. 566 at 101-04.) Thus, as the government pointed out, Williamson was the only real person who had signing authority over the Chase Bank accounts. (ECF No. 547 at 4.)

Williamson does not dispute the amount of fraudulent tax refunds deposited into the two Chase Bank accounts. However, he argues that—at best—he should be responsible for only up to 25% of the amount of the fraudulent tax refunds because evidence presented at trial demonstrates he distributed funds to his co-defendants, including Hanzelic. However, the government need not demonstrate that Williamson actually used the money it seeks to forfeit, nor does it matter that some of that money was distributed to the co-conspirators. *See Anthony*, 747 F. App'x at 629. It is enough that Williamson had control over the fraudulent funds in the two Chase Bank accounts—and therefore the ability to use these funds.

### B.     21 U.S.C. § 853(p)'s Substitution and Forfeiture Requirements

Williamson next argues that the government must satisfy the requirements in § 853(p) to obtain a money judgment.[11] (ECF No. 584 at 1-3, 5-10.) The government counters and further reiterated at the Hearing it is not required to meet the requirements of substitution and forfeiture under § 853(p) and Rule 32.2(e) to obtain the money judgment here because it seeks a money judgment in the first instance—not as substitute property. (ECF No. 595 at 11-12.)

Because the government seeks only a money judgment, substitute property is not at issue and thus, per Ninth Circuit caselaw, the requirements under § 853(p) and Rule 32.2(e) are not implicated. *See, e.g.*, *Newman*, 659 F.3d at 1242-43 (recognizing that § 853(p) "carries its own set of procedural and substantive requirements before the court may order the forfeiture of substitute property. But, here, the government did not seek 'substitute property' under Rule 32.2(e). The government sought only a money judgment as a form of criminal forfeiture under Rule 32.2(b). Because the government sought a money judgment in the first instance, there was no need to seek *substitute* property"); *Lo*, 839 F.3d at 792 (similarly rejecting the argument that § 853(p) must be met to obtain a

---

[11]Section 853(p) and Rule 32.2(e) particularly concern the government pursuing substitute property. *See* Fed. R. Crim. P. 32.2(e) (allowing the government to seek subsequently located "substitute property"); 21 U.S.C. § 853(p) (permitting the substitution of property in some circumstances).

8

money judgment); *see also Nejad*, 933 F.3d at 1165 (concluding the *Newman* and *Lo*, among others, "are not 'clearly irreconcilable' with the reasoning or holding of *Honeycutt*.").

### C. Forfeiture Amount

Williamson also argues the government seeks to recover too much money from him. The Court addresses each of Williamson's more specific arguments that fall within this category.

As noted, Williamson premises a purported Sixth Amendment violation on the contention that the government is, by seeking a large forfeiture money judgment against him, punishing him for his decision to go to trial. (ECF No. 590 at 2.) However, such contention is tenuous at best. The Court therefore does not consider it further.

In the same vein, Williamson further claims that he has been subject to disparate treatment merely for going to trial. (ECF No. 644 at 5-6.) Again, there is no evidence that would permit the Court to make a causal conclusion that any disparate treatment of Williamson, actual or perceived, is a result of his choosing to go to trial. The government expressly seeks the recovery amount based on its contention that such is the amount Williamson acquired, controlled, possessed, or benefited from. (ECF No. 648 at 13-14.) And as noted *supra*, the evidence supports the government's contention. Further, Williamson admits that "[Defendant] Brian Summers, by plea agreement, had a $1.5 million forfeiture order imposed[.]" (ECF No. 644 at 6; *see also* ECF No. 237.) The Court therefore rejects Williamson's contention that the forfeiture judgment is a disparate result of Williamson's decision to go to trial.

Relying on Rule 32.2(b)(5)(A), Williamson also demands a jury trial for the purpose of determining the amount of the criminal forfeiture money judgment.[12] (ECF No. 584 at 2-3.) The government in gist counters that Williamson is not so entitled—neither

---

[12] Rule 32.2(b)(5)(A)'s text provides:

(A) **Retaining the Jury.** In any case tried before a jury, if the indictment or information states that the government is seeking forfeiture, the court must determine before the jury begins deliberating whether either party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict.

9

constitutionally nor statutorily. (ECF No. 648 at 14-16 & n.72.) Both Supreme Court and Ninth Circuit caselaw supports the government's position. *See Libretti v. United States*, 516 U.S. 29, 49 (1995) (ruling that "the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection"); *Lo*, 839 F.3d at 795 (quoting *United States v. Christensen*, 828 F.3d 763, 822 (9th Cir. 2015) ("We have likewise concluded 'that Federal Rule of Criminal Procedure 32.2 does not require a jury determination for forfeiture in the form of a personal money judgment, which is what the government obtained here.'")); *cf. United States v. Mancuso*, 718 F.3d 780, 799 (9th Cir. 2013) (focusing on the text of Rule 32.2(b)(5)(A), as amended in 2009, and ultimately concluding based on the facts of that case "[t]he failure of the district court to inquire before the jury began deliberating whether either party requested a jury determination on the nexus between the property sought and the crime was . . . harmless"). Based on this caselaw, the Court concludes that Williamson is not entitled to have a jury determine the amount of the forfeiture money judgment.

The Court similarly rejects Williamson's argument that the forfeiture amount here violates the Excessive Fines Clause of the Eighth Amendment. (ECF Nos. 584 at 10, 644 at 3-4.) The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. However, "[w]hen the district court orders that the defendant forfeit the profits gained from illegal activity, it is hard to imagine how such a forfeiture could constitute cruel and unusual punishment." *United States v. Feldman*, 853 F.2d 648, 663 (9th Cir. 1988). And that is the case here. As explained *supra*, the government seeks forfeiture of Williamson's gains from his illegal activity in this criminal case against him. The government's requested forfeiture amount does not violate the Excessive Fines Clause under the facts of this case. *See id.* (finding that requiring the defendant to forfeit the insurance proceeds he obtained from burning down his own businesses was not excessive, and thus did not violate the Eighth Amendment, in part because those proceeds were illegal); *see also United States v. Fujinaga*, Case No. 2:15-cr-0198-GMN-NJK, 2019

WL 2503939, at *6 (D. Nev. June 17, 2019) (currently on appeal) (finding a forfeiture order in an amount reflecting the defendant's illegal proceeds did not violate the Eighth Amendment); *Richie*, Case No. 2:15-cr-0285-APG-GWF, ECF No. 455 at 3 (finding funds traceable to illegal activity subject to forfeiture).

Williamson more specifically relies on *U.S. v. Bajakajian*, 524 U.S. 321, 326 (1998) and *U.S. v. Beecroft*, 825 F.3d 991, 1001-02 (9th Cir. 2016), to argue that the forfeiture amount is an excessive fine in violation of the Eighth Amendment's Excessive Fines Clause. (ECF No. 584 at 2, 5-6.) However, neither case changes the result here. As to *Bajakajian*, the Court agrees with Judge Navarro that *Bajakajian* is not irreconcilable with the *Feldman* principle the Court is applying here—that ordering forfeiture of Williamson's illegal proceeds does not, and cannot, violate the Excessive Fines Clause under these facts. *See Fujinaga*, 2019 WL 2503939, at *6. Moreover, the Court also agrees with Judges Navarro and Dawson that *Feldman* remains good law even in view of *Beecroft*. *See id.* (citing *U.S. v. Brandel*, Case No. 2:13-CR-439-KJD-VCF, 2019 WL 2110504, at *8 (D. Nev. May 14, 2019) (currently on appeal)). In sum, the Court rejects Williamson's argument that the amount the government seeks in forfeiture violates the Excessive Fines Clause.

For all of these reasons, the Court will grant the government's motion for a forfeiture order money judgment in the amount of $1,936,641.99.

**IV.   RESTITUTION MOTION**

The Restitution Motion seeks a slightly lower amount—$1,924,041.99.[13] (ECF No. 582.) Williamson opposes this restitution amount, arguing in gist that his conduct did not proximately cause the loss that occurred when his co-defendants submitted fraudulent tax returns, resulting in the IRS issuing them refund checks, and there was no evidence that he filed any fraudulent returns. (ECF No. 589 at 1-4.) True enough. The government did not present any evidence that Williamson submitted any fraudulent tax returns. However,

---

[13] "The addition of restitution does not make the penalty constitutionally excessive." Feldman, 853 F.2d at 663.

the Court agrees with the government that—as pertinent to the Restitution Motion—the loss occurred when the refund checks were cashed, and Williamson was significantly involved in that part of the conspiracy.

As the government argued both at the Hearing and to some extent in its briefing, Williamson proximately caused the loss to the U.S. Treasury because he laundered the fraudulent tax refund checks. (ECF No. 582 at 16.) A jury found Williamson guilty of conspiracy to commit mail fraud and wire fraud. (ECF No. 530.) And without Williamson, the other members of the conspiracy would not have been able to cash many of the fraudulent refund checks. (ECF No. 582 at 16.) Williamson was thus the proximate cause of the losses the government seeks to recover here. *See Lo*, 839 F.3d at 788-89 (affirming restitution imposed on defendant who transferred funds in the amount of "all losses caused by the schemes to defraud"). Moreover, Williamson both directed where the money obtained from the fraudulent scheme would go, and spent some of the money on himself—buying trucks, motorcycles, and a camper. (ECF No. 582 at 16; *see also id.* at 11-12.) Williamson's argument he was not the proximate cause of the losses the government seeks to recover is accordingly unpersuasive.

The Court is also unpersuaded by Williamson's related argument that "the actual harm that caused the losses occurred when tax refund applications were prepared and when the refund checks were issued." (ECF No. 589 at 3.) "[W]hen the crime of conviction is mail fraud or other crime requiring proof of a scheme, a court is authorized to order restitution on related but uncharged conduct that is part of a fraud scheme, and is not limited to the harm caused by the particular counts of conviction." *Lo*, 839 F.3d at 788 (internal quotation marks and citations omitted). The Court can thus properly order Williamson to pay restitution to the U.S. Treasury for the amount he laundered in furtherance of the mail fraud conspiracy for which he was convicted.

In sum, the Court will grant the government's motion for a restitution order in the amount identified in its motion—$1,924,041.99.

///

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that the government's motion for a forfeiture order of $1,936,641.99 (ECF No. 641) is granted.

It is further ordered that the government's motion for a restitution order of $1,924,041.99 (ECF No. 582) is granted.

DATED THIS 19th Day of October 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE